## UNITED STATES *v.* COUNTY OF CLARK.

1. A *mandamus* enforces the exercise of an existing power, but does not confer power upon those to whom it is directed.

2. Where bonds were not issued prior to Jan. 1, 1874, by a county court in Missouri, in payment of its subscription to the stock of a railroad company, and the special tax of one-twentieth of one per cent, which, after the issue of the bonds, was allowed by law for the specific purpose of providing means to pay the interest on them, was levied for that year, — *Held,* that a *mandamus* to levy and collect such special tax for the years 1872 and 1873 would not lie.

3. Where the county court has no authority by law to levy, in addition to said special tax, a county tax exceeding the rate of one-half of one per cent on the valuation of the taxable property in the county, and it appears by the record that the county tax was levied and collected for the year 1874, — *Held,* that there was no error in the refusal of the court below to order a *mandamus* to enforce the collection of such tax.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

On the 24th of September, 1874, the United States, on the relation of William A. Johnston, filed a petition for a *mandamus* against the county court of Clark County, Missouri, and the justices thereof.

An amended alternative writ was filed on the 5th of April, 1875, in which it is alleged, that William A. Johnston obtained in said Circuit Court a judgment, June 6, 1874, against said county, for $8,606.64, on four instalments of interest on one hundred bonds of said county, for $500 each, which it executed and delivered June 1, 1871, by order of its county court, under the authority conferred by the charter of the Missouri and Mississippi Railroad Company; that the said county court was authorized and empowered to levy a tax of one-twentieth of one per cent upon the assessed value of taxable property for each year after the issue of said bonds; that by the laws of said State it is the duty of said county court to levy taxes, and pay all the indebtedness of said county; and that, in addition to the said one-twentieth of one per cent, the said county is authorized to levy a tax of one-half of one per cent yearly, on the taxable property of the county, to pay its debts and expenses; that the valuation of taxable property in said county is not less than $3,740,000; that said county court, for the year 1874, levied

a tax for county purposes of only four mills on the dollar, leaving unlevied one mill, which they were authorized to levy; that said county court did not levy the tax of one-twentieth of one per cent, nor any other sum, for the years 1872, 1873, and 1874, to pay the interest on said bonds, for which said judgment was rendered; that the tax of one-twentieth of one per cent would not raise over $1 500 or $2,000 a year, while the amount of the bonds issued was $200,000, and required a tax yielding $16,000; that a tax of one mill on the dollar of the valuation will not exceed $3,750, and is not sufficient with the one-twentieth of one per cent to pay said judgment in one year; that an execution was issued on said judgment, and returned "no property found," and a demand made on said county court to levy and collect taxes to pay said judgment; that said officers have neglected to levy and collect said taxes; and that said Johnston is without adequate remedy at law.

The writ was thereupon issued, commanding the county court and the justices thereof to "levy and collect a tax of one-twentieth of one per cent, for the years of 1872, 1873, and 1874, and each of the following years, and apply a *pro rata* share thereof on the plaintiff's judgment; and to levy the residue of said five-mill tax for the year 1874, and each succeeding year, and collect said taxes, and apply the same yearly on the plaintiff's judgment, until interest at the rate of seven per cent and costs are paid and satisfied in full," or that they appear on a day named in the writ, and show cause why they refuse to do so.

The defendants, in their answer, alleged, that Clark County, in the year 1872, adopted what is termed in the laws of Missouri "township organization," and had from that time been governed by the laws of Missouri pertaining to township organization; that the county court of said county, on May 3, 1871, executed $200,000 in bonds of said county, to pay for two thousand shares of stock for which it had that day wrongfully, fraudulently, and corruptly subscribed in the Missouri and Mississippi Railroad Company, and placed said bonds in the hands of an agent, to be paid over to said company, from time to time, as the said road progressed through said county; that all of said bonds had been fraudulently disposed of by said agent, and

remained unpaid, with the coupons thereon; that a judgment for $4,124 had been rendered against said county on coupons of part of said bonds in favor of Waterman & Beaver, on June 6, 1874; that none of said $200,000 of bonds were delivered on the first day of June, 1871, or before January, 1874, and that the same belonged to the county of Clark, until January, 1874: that the county court of said county had no authority to subscribe for said two thousand shares of the capital stock of said Missouri and Mississippi Railroad Company, or issue bonds therefor, or levy a tax to pay the same, except in so far as such authority was conferred by the thirteenth section of an act passed by the General Assembly of the State of Missouri, entitled " An Act to incorporate the Missouri and Mississippi Railroad Company," approved Feb. 20, 1865, which provides that it shall be lawful for the corporate authorities of any city or town, or the county court of any county desiring so to do, to subscribe to the capital stock of said Missouri and Mississippi Railroad Company, and issue bonds therefor, and levy a tax to pay the same, not to exceed one-twentieth of one per cent, upon the assessed valuation of the taxable property for each year; that the taxes of 1873 had been levied before the present justices of the county court had been elected; that, knowing that all of said bonds had been fraudulently issued and disposed of, and believing that the holders thereof took the same with notice of the frauds, the defendants refused to levy the tax of one-twentieth of one per cent for the year 1874; that said judgment on said coupons was not rendered until June, 1874, and that by the laws of Missouri the county court is authorized to levy taxes only in the month of April of each year, and has no authority to levy said special tax of one-twentieth of one per cent for more than one year, at one and the same time, or during or for more than one and the same year, and had no authority to levy said tax until said bonds were sold; that Clark County was not authorized to levy a tax of one-half per cent yearly on all the taxable property of said county, to pay its debts and expenses, but that said county, by its county court, was, for the year 1874, empowered to levy such sums as might be necessary to defray the expenses of said county by a tax upon all property and licenses made taxable by law for State

purposes, but the county tax should in no case exceed one-half of one per cent; that the defendants did not fail to levy said tax of one-half of-one per cent for the year 1874, but that it was fully levied, collected, and paid out for county expenses; that the county court has no authority in any one year to levy taxes for the purpose of paying the expenses of said county, except to the extent of said one-half of one per cent; that all that said tax can produce is necessary to pay the current expenses of said county, and that the said county court had no authority to levy said county taxes to pay the judgment of said Johnston; and that defendants had no authority or power to make any other order or provision than that said special tax of one-twentieth of one per cent on all the taxable property of Clark County, when collected, should be applied *pro rata* to the payment of all the interest coupons on said $200,000 in bonds, including the said judgment of said Johnston.

The plaintiff demurred to the return. The court overruled the demurrer.

The cause was submitted on the amended writ and return; whereupon the court ordered that a peremptory writ of *mandamus* be issued against the defendants, commanding them " to cause a tax levy to be made for the year 1874, on the assessment of that year, to the extent of one-twentieth of one per cent; and for the year 1875, on the assessment of the latter year, at the same rate of one-twentieth of one per cent; the proceeds thereof to be applied, *pro rata*, to the amount of the judgment in this case, and in other cases, on coupons of bonds of same issue, and also to interest on the other bonds of the same issue; and that respondents cause to be levied, from year to year, the same per cent on assessed values until the *pro rata* portion thereof, applicable to the judgment, interest, and costs in this case, shall be paid."

The United States, on the relation of Johnston, having excepted to the refusal of the court to require the levy and collection of the tax of one-twentieth of one per cent for the years 1872 and 1873, and also the levy prayed for in excess of said tax, sued out this writ of error.

*Mr. James Grant* for the plaintiff in error.

*Mr. James O. Broadhead* and *Mr. George W. McCrary,* contra.

Mr. Justice Strong delivered the opinion of the court.

The judgment of .the Circuit Court was correct.  The return of the defendants to the alternative writ set up a complete defence, and its averments of fact are admitted by the de- murrer of the United States.  It is then, for the purposes of this case, an established fact that the county bonds held by the relator, and the coupons upon which his judgment was obtained, were not issued, and, therefore, did not become a debt of the county until Jan. 1, 1874.  Until they were issued, they imposed no liability upon the obligor; and, until the lia- bility arose, there was no obligation resting on the county court to levy the tax of one-twentieth of one per cent, au- thorized by the charter of the Missouri and Mississippi Rail- road Company.  That tax was, by the act of the General Assembly conferring that charter, allowed for the specific pur- pose of providing means for the payment of the bonds which might be issued for the payment for the county's subscription to the capital stock of that company.  So long as the bonds remained unissued, the tax remained unauthorized.  There never was, therefore, any authority given by law for the levy of that special tax for the years 1872 and 1873.  The fact that the bonds, when delivered in 1874, had attached to them cou- pons for interest, which, apparently, had accrued prior to their delivery, could not. enlarge the power of the county court, or confer upon it authority to levy in any year more than one special tax of one-twentieth of one per cent.  It need not be said that no court will by *mandamus* compel county officers of a State to do what they are not authorized to do by the laws of the State.  A *mandamus* does not confer power upon those to whom it is directed.  It only enforces the exercise of power already existing, when its exercise is a duty.  The Circuit Court was, therefore, right in refusing to order a peremptory *mandamus* to levy and collect the special tax for the years 1872 and 1873, and in directing it only for the subsequent years.

There was also no error in refusing to order the writ to en- force the levy and collection of other taxes.  The county court has, by law, no power to levy, in addition to the special tax allowed by the charter of the Missouri and Mississippi Railroad

Company, a tax exceeding the rate of one-half of one per cent of the valuation of the taxable property; and the return to the alternative writ avers, that, for the year 1874, a county tax of one-half of one per cent had been fully levied and collected. If this was so, and the demurrer admits it, the county court was in no default in this particular; and as the petition for the *mandamus* was presented in 1874, before any default in levying a tax, a more favorable judgment on the demurrer could not have been given for the relator than the court gave.

In thus deciding, we are not to be understood as maintaining all that is averred in the defendants' return to the alternative writ. We do not assert that the relator is without remedy against the county, or that his remedy is restricted to a resort to the proceeds of the special tax. It is enough for this case that the judgment of the Circuit Court was correct on the pleadings.                    *Judgment affirmed.*